UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

CORBIN RAY LOFLIN,

    Plaintiff,

v.

ALBEMARLE OIL COMPANY,

    Defendant.

Civil Action No. 1:19 - cv - 0749

## COMPLAINT

Plaintiff, Corbin Ray Loflin ("Loflin" or "Plaintiff"), hereby complains and alleges against Defendant Albemarle Oil Company ("ALCO" or "Defendant") the following:

## INTRODUCTION

1. Plaintiff brings this action against Defendant for retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et. seq.*

2. Plaintiff suffered retaliation upon informing Defendant of and opposing a sexually hostile environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et. seq.*

## THE PARTIES

3. Corbin Ray Loflin ("Loflin" or "Plaintiff") is a male citizen and resident of Chesterfield, South Carolina.

1

4. Defendant Albemarle Oil Company ("AOC" or "Defendant") is, and at all relevant times was, a business corporation and in good standing in the State of North Carolina.

## JURISDICTION AND VENUE

5. This action arises under federal statutes including Title VII. This Court has jurisdiction over this matter pursuant to 42 U.S.C.§2000e *et. seq.* because the claims brought herein constitute a federal question under the laws of the United States.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Plaintiff was hired to work in this District and Defendant conducts business in this District.

## ADMINISTRATIVE EXHAUSTION

7. At all times relevant to this action, Plaintiff was an "employee" covered by the protections of Title VII of the Civil Rights Act of 1964 within the meaning of 42 U.S.C. § 2000e(f).

8. Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

9. Defendant employed at least 15 employees at all relevant times.

10. Plaintiff satisfied his obligation to exhaust his administrative remedies by timely filing Charges of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") alleging retaliation. On April 29, 2019, the EEOC issued a Notice of Suit Rights and Loflin timely brings this action within ninety (90) days of his receipt thereof.

11. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## FACTS

12. Albemarle Oil Company (AOC") was founded in 1935, and for over six decades, was primarily a heating oil and gasoline distributor.

13. Beginning in 2002, AOC began operating convenience store-gas stations and later began operating Dairy Queen franchises ("DQ") located adjacent to some of the convenient stores.

14. Currently, AOC owns and operates twenty-five convenience stores in North and South Carolina, and has a DQ store adjacent to seven of those convenience stores.

15. AOC currently employs approximately 395 employees in the two states.

16. Of the seven DQ locations, five of them serve ice cream, frozen cakes and treats, while 2 of the locations also serve the traditional "grill" food, such as hamburgers, hotdogs, french fries, etc..

17. These two locations are known as "Grill and Chill".

18. One of the Grill and Chill locations is DQ600 (location #600), located in Hamlet, North Carolina.

19. DQ600 typically operates with twenty-two employees consisting of a full time General Manager, a full time Assistant Manager and twenty other full and part time employees in the grill and/or chill area.

20. Many of the employees are under the age of 18, are still in high school and work part time capacity after school and on the weekends.

21. In fact, a target employee for AOC is under the age of 18.

22. An AOC General Manager is responsible for all operational aspects of the store and the Assistant Manager supervises the store when the General Manager is not present.

23. For the most part, the General Manager and Assistant Manager are working different days and hours and so are not both in the store at the same time.

24. There will be time, however, when both are in the store at the same time.

25. This is especially true when the Assistant Manager is new and is "in training".

26. The General Manager is overseen by an Area Manager.

27. Those employees wo are being considered for an Assistant Manager position, whether through internal promotion or outside hire, must go through a period of training where they are given the increasing responsibilities of an Assistant Manager, but are not in a position to be able to oversee the operation of the store in the absence of the General Manager.

28. Part of this training period includes going through certain training modules, including onsite training, and passing various tests, ultimately leading to their "DQ Certification".

29. Any new hire, regardless of position, is considered a probationary employee during the first 90-days of employment.

30. Loflin was hired as an Assistant Manager-in-Training for the DQ stores on May 13, 2018.

31. Loflin was scheduled to be in training for approximately three months as he completed various training modules and tests and obtained his DQ Certification.

32. .

33. The General Manager for DQ600 to whom Loflin initially reported was Joe Newman ("Newman")

34. On July 10, 2018, Loflin heard Newman make a vulgar and inappropriate pedophilic sexual innuendo regarding a Monster Truck Rally flyer/poster, specifically the admissions price of $15 and children being free. His exact statement was as follows, " I thought that meant I could pay $15, get a child for free - get a blonde girl, start her young and train her right. "

35. Defendant AOC hires many minor children, often as young as 16 years old, many of whom are female. Newman's comment was even more alarming and concerning, given the employee demographic at AOC.

36. These comments were made within earshot and in the presence of two co-workers, one who was a minor.

37. Prior to leaving work that day, Loflin pulled the minor co-worker aside to confirm that Loflin had heard the comment correctly. The co-worker confirmed that Loflin had heard the comment correctly and Loflin told him not to discuss it until asked by HR or upper management.

38. Upon leaving work, Loflin attempted to call Area Manager, Lisa Nicoletti, but did not receive an answer. Loflin then sent Nicoletti a text message requesting her to call him.

39. Loflin then immediately reached out to the corporate office to report the incident to HR Manager, Donna Boone.

40. While Loflin was on the phone with Boone, Nicoletti returned Loflin's call. Loflin apprised Nicoletti of the situation and informed her that he was on the phone with HR regarding the matter as well.

41. Loflin was assured that the issue would be investigated thoroughly and Boone stated she did not want to lose Loflin and that he was one of " the best managers the company has hired since she has been here."

42. Boone suggested the company move Loflin to another Monroe location but Loflin replied it was not necessary. At no time did Boone or Nicoletti instruct Loflin to remain silent about the incident and not discuss it with any employee.

43. When Loflin expressed concern that Boone might be angry at him for making the report, Boone responded by text, "Making the comments you said he made are not appropriate and it is your responsibility to let me or HR know that they've been made. You did the right thing."

44. On July 11, 2018, Loflin reported to work without incident and completed his normal closing shift at the Hamlet location.

45. During his shift, Loflin was made aware by several crew members that Newman had mentioned, during the course of a conversation regarding tattoos and piercings, that his penis is/was pierced.

46. On July 12, 2018, Boone spoke with CEO Larry Graham and Nicoletti about the situation. They decided it was best to remove Loflin from the situation to avoid hostility and/or ill feelings.

47. Although Loflin insisted the transfer was not necessary, he was given the option of transferring to either the Monroe Grill & Chill or Locust Treat location. Loflin

6

elected to be transferred the Monroe Grill & Chill Location and requested to meet with the new Area Manager, Erica Austin ("Austin") and General Manager, Kimberly Macko ("Macko") prior to starting at the new location.

48. Prior to relocating to the Monroe location, Loflin asked if my pay would remain the same and was told, " Yes ". Loflin also inquired as to whether or not he would be allowed to retain his 50-hour work weeks and was assured by Boone that he would.

49. Loflin was given the option of taking July 13, 2018 through July 15, 2018 off and begin at the Monroe location Monday, July 16, 2018, however, Loflin declined as he could not afford to miss work.

50. Boone made contact with Loflin's new Area Manager, Erica Austin and General Manager, Kimberly Macko to see if they were available to meet with Loflin on the afternoon of July 12, 2018 and a meeting was scheduled for 3 pm.

51. Boone then informed Loflin that she would be at the Hamlet location on, Friday, July 13, 2018, to complete the investigation.

52. Loflin arrived at the Monroe location on July 12, 2018 to meet with Austin, Macko and the Assistant Manager, Shandi Morgan ("Morgan").

53. During the meeting, Macko and Morgan asked why Loflin was being transferred and he and Austin responded that this location was a better fit and that she was not at liberty to go into further detail, but that she had been assured by Boone and Nicoletti that Loflin would be an asset to the management team.

54. Loflin was then given a tour of the store. They discussed sales, sales building, Local Store Marketing and an initial schedule was made for Loflin's 50-hour work week at the Monroe location to begin on Friday, July 13, 2018.

55. On July 13, 2018, while Loflin was getting ready to report for his first shift at the Monroe location, he received a message from Austin. Loflin promptly returned the call and Austin informed Loflin that she had been told that Loflin could not report for work until he had spoken with Boone.

56. Loflin called the Corporate Office attempting to reach Boone, but there was no answer, so Loflin left a voicemail for to return his call. Loflin also sent Boone an email requesting same.

57. Loflin then sent a text message to Nicoletti asking if there was another way for Loflin to get in contact with Boone. Nicoletti responded, "She should be back Monday." Loflin sent another text to Nicoletti and told her that Austin had contacted him and stated that he needed to speak to Boone prior to starting his shift and asked, "So I can't work until Monday? I'm supposed to work today from 1:00 until closing. I'm so confused."

58. On July 13, 2018, Loflin was subsequently contacted by Boone and was terminated. Boone stated that Loflin's complaint regarding the inappropriate sexual comments made by Newman was unsubstantiated and that Loflin was being terminated as a result.

59. Loflin told Boone that he felt he was being retaliated against for following the law and company policy by reporting the comments made by Newman.

60. Loflin also complained to the company's CEO, Larry Graham ("Graham"), via email on two separate occasions about his unlawful termination. No response was ever received.

8

61. Prior to the filing of his EEOC charge, no one at AOC, gave Loflin any other reason for the termination, although AOC has since contrived several post hoc justifications for the retaliatory discharge of Loflin.

## FIRST CLAIM FOR RELIEF
### (Retaliation for Opposing Violations of Title VII of the Civil Rights Act of 1964 - as amended)

62. Defendant's conduct constituted retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*.

63. Plaintiff was engaged in the protected activity of reasonably opposing practices he reasonably believed constituted unlawful discrimination on the basis of sex.

64. Plaintiff genuinely believed that Defendant was discriminating based on sex.

65. Plaintiff's belief was reasonable.

66. Plaintiff opposed what he reasonably believed to be sex-based discrimination in a reasonable manner.

67. The Defendant, through Boone and Graham, was aware that Plaintiff was engaged in a protected activity.

68. The Defendant, through Boone and Graham, took adverse employment actions against Plaintiff by both disciplining him and terminating his employment.

69. The Defendant, through Boone, made a threat of consequences against Plaintiff when he told Boone that he opposed Newman's discrimination.

70. The Defendant, through Boone, told the Plaintiff he was being disciplined precisely because he engaged in said protected activity.

71. The adverse employment actions taken by Defendant, through Boone and Graham, were causally and temporally linked to Plaintiff's engagement in protected activity.

72. As a direct result of said conduct, Plaintiff has suffered lost past and future wages, sales commissions, bonuses and job benefits, has incurred past medical expenses, and has suffered and will continue to suffer emotional pain, suffering, inconvenience, embarrassment, mental anguish, and other non-pecuniary losses in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Wrongful Discharge in Violation of Public Policy)

73. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

74. Defendant employed at least fifteen (15) employees at all relevant times.

75. Defendant violated public policy by terminating Loflin three days after he exercised his rights and in good faith opposed what he viewed as injurious conduct as set forth in the paragraphs above.

76. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Loflin has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

77. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Loflin's rights. As a result of Defendant's conduct, Loflin is entitled to recover punitive damages in an amount to be determined at trial.

78. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

# PRAYER OR RELIEF

Wherefore, Loflin respectfully requests that this Court enter judgment in his favor and grant him the following relief:

1. Enter a judgment against Defendant and order Defendant to pay Plaintiff compensatory damages in an amount to be determined at trial;

2. Award Plaintiff pre-judgment and post-judgment interest against Defendant;

3. Award Plaintiff all reasonable costs and attorneys' fees incurred in connection with this action;

4. Award Plaintiff injunctive relief to prohibit unlawful conduct in the future;

5. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

6. Grant Plaintiff a trial of this matter by a jury.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NC State Bar No. 26590
THE LAW OFFICES OF MICHELLE GESSNER, PLLC
435 East Morehead Street
Charlotte, North Carolina 28202
Telephone: (704) 234-7442
E-Mail: michelle@mgessnerlaw.com

*Attorney for Plaintiff*